IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| MICHAEL A. BRYNER, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12CV103–HEH |
| | ) | |
| E.I. DUPONT DE NEMOURS & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
### (Granting Petition for Attorney's Fees, Costs and Prejudgment Interest)

THIS MATTER is before the Court on a Petition for Attorney's Fees, Costs and Prejudgment Interest pursuant to 29 U.S.C. §1132(g)(1) and Federal Rule of Civil Procedure 54(d), filed by Plaintiff Michael A. Bryner ("Plaintiff" or "Bryner") on January 10, 2013. (ECF No. 30.) This request arises from an underlying civil action brought against Bryner's employer, E.I. du Pont de Nemours & Company ("DuPont"), under Section 502(a)(1)(B) of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The parties have filed memoranda of law in support of their respective positions. (ECF Nos. 31, 36.) The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons set forth herein, Plaintiff's Petition will be granted in part.

# I. BACKGROUND[1]

Bryner and his spouse, Lorraine Bryner ("Mrs. Bryner") were covered by DuPont's "Beneflex Accidental Death Insurance Plan" (the "Plan"). (Mem. Op. of Dec. 27, 2012 at 2, ECF No. 28.) Under the Plan terms, their lives were insured for any loss "directly related to the injuries from [an] accident." (*Id.*) The Plan excluded any death resulting from "sickness, disease or bodily infirmity except when a direct result of a covered accident." (*Id.*) However, the Plan failed to define the term "covered accident." (*Id.*) DuPont serves as "Plan Administrator" vested with "the discretionary right to determine eligibility for benefits . . . and to construe the terms and conditions of [the] Plan."[2] (*Id.*)

Mrs. Bryner suffered from a number of medical conditions, including gout and renal disease. (*Id.*) To treat her non-fatal gout, Mrs. Bryner's physicians prescribed a standard dose of twice-daily colchicine with instructions to increase this dose to five or six tablets per day when necessary to control pain. (*Id.* at 2–3.) Mrs. Bryner took such a heightened dose around April 5, 2004, and soon thereafter her health quickly deteriorated. (*Id.*) After a weeklong hospitalization, Mrs. Bryner died on April 15, 2004.

---

[1] The facts of this case are only briefly summarized herein based upon the undisputed material facts set forth in this Court's Memorandum Opinion granting Plaintiff's Motion for Summary Judgment. For a more detailed discussion of the facts, the reader may refer to the Court's previous Memorandum Opinion, entered on December 27, 2012. (ECF No. 28.)

[2] DuPont's insurer, Prudential Insurance Company of America ("Prudential"), makes initial decisions on claims and reconsideration requests, but DuPont ultimately has full authority to review those decisions. (Mem. Op. at 2.) For purposes of this opinion rather than distinguishing decisions made by DuPont and those made by Prudential on behalf of DuPont, the Court refers to DuPont only, as DuPont retained authority to review Prudential's decisions.

(*Id.*) Mrs. Bryner's death certificate indicated as her cause of death overwhelming sepsis and a possible unintentional colchicine overdose. (*Id.*)

In December 2004, Bryner filed a claim for benefits under the Plan, based on evidence that Mrs. Bryner's death was due to accidental colchicine poisoning following a severe gout attack. (*Id.* at 3.) DuPont initially denied Bryner's claim in March 2005, noting that the hospital records failed to indicate a colchicine overdose. (*Id.*) Bryner appealed, including an additional medical opinion concluding that the underlying cause of Mrs. Bryner's death was colchicine toxicity. (*Id.*) While acknowledging that Mrs. Bryner's cause of death was consistent with colchicine toxicity, DuPont concluded that her death resulted from a combination of factors and denied Bryner's claim on that specific basis. (*Id.* at 4.)

In August 2006, Bryner again appealed to DuPont. (*Id.*) On September 8, 2006, DuPont denied Bryner's claim, emphasizing the exclusion for "sickness, disease or bodily infirmity except when a direct result of a covered accident" and specifically rejecting Bryner's assertion that colchicine toxicity was the sole cause of death. (*Id.*) DuPont relied on the existence of multiple causes of death to reject any contention that Mrs. Bryner's death was "a direct result of a covered accident." (*Id.*) DuPont did not indicate whether it would have denied benefits regardless of the cause of death. (*Id.*)

In April 2009, Bryner filed an initial lawsuit ("*Bryner I*")[3] in this Court challenging DuPont's denial of benefits. (*Id.*) Pursuant to a March 2010 settlement agreement reached in *Bryner I*, DuPont agreed to reconsider Bryner's claim *de novo*,

---

[3] *Bryner v. Prudential Ins. Co. of Am., et al.*, No. 3:09cv230 (E.D. Va. filed Apr. 15, 2009).

including consideration of an additional medical opinion concluding that colchicine toxicity was the sole cause of death. (*Id.* at 4–5.) In return for considering the new evidence, DuPont received: (1) dismissal with prejudice for its insurer, Prudential; (2) a series of deadlines imposed upon Bryner which, if missed, would result in dismissal with prejudice of all claims; and, (3) the discretion to consider any other evidence it deemed proper. (*Id.* at n. 3.) Additionally, the *Bryner I* settlement agreement specifically permitted Bryner to "refile *this* action in *this* Court" if he was not satisfied with DuPont's decision. *Bryner I*, No 3:09cv230, Consent Order at ¶ 2(e) (E.D. Va. Order filed Mar. 15, 2010) (emphasis added). The settlement agreement was silent as to attorneys' fees.

In reconsidering Bryner's claim as part of the *Bryner I* settlement, DuPont obtained an independent evaluation of Mrs. Bryner's records. This independent analysis, from DuPont's own expert, concluded that Mrs. Bryner's death was triggered solely by a toxic dosage of colchicine—undermining the factual basis for each previous denial. (*Id.* at 5.) Nevertheless, in June 2011, DuPont again denied the claim and subsequent appeal. (*Id.*) For the first time, DuPont justified the denial based on the fact that Mrs. Bryner's death "was the direct result of a deliberate action rather than a covered accident," concluding that death due to a prescribed course of medical treatment does not fall within the definition of a "covered accident." (*Id.*)

On February 10, 2012, Bryner brought this lawsuit against DuPont challenging the denial of his claim ("*Bryner II*"). (*Id.* at 1.) The parties filed cross motions for summary judgment, and the Court found that DuPont failed to employ a reasonable definition of the term "accident." (*Id.*) In doing so, DuPont abused its discretion in denying Bryner's

4

claim. (*Id.*) Consequently, the Court denied DuPont's Motion for Summary Judgment and granted Bryner's Motion for Summary Judgment on December 27, 2012. (*Id.* at 17.)

Bryner now requests an award of attorney's fees, costs, and prejudgment interest. Bryner seeks $63,600.00 in attorneys' fees and $700 in taxable costs. (Pet. for Atty's Fees at 1.) He also requests prejudgment interest calculated from at least April 15, 2009, at a rate of 12%. (Reply Mem. in Supp. of Pet. for Atty's Fees at 2.) DuPont does not challenge the awarding of costs. However, should the Court find attorneys' fees and prejudgment interest appropriate, DuPont requests a reduced fee award of $34,350.00 and prejudgment interest calculated at a rate between .39% and 2.99% beginning to accrue no sooner than May 14, 2010. (Mem. in Opp'n at 11.)

## II. LEGAL STANDARD

ERISA provides that "the court in its discretion *may* allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (emphasis added). The Supreme Court interprets this provision to mean that a party is eligible for an award of attorneys' fees in an ERISA case if the party has achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010). Even a successful party does not enjoy a presumption in favor of an award of attorney's fees. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010).

Once the Court determines that a litigant in an ERISA case has achieved "some degree of success on the merits," the Court applies the guidelines identified by the Fourth Circuit in *Quesinberry* to determine whether to award attorneys' fees to an eligible party. *Williams*, 609 F.3d at 635 (referring to *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d

5

1017, 1029 (4th Cir. 1993) (en banc)). The five factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy the award of fees; (3) whether the award of fees would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan, or sought to resolve a significant legal question regarding ERISA itself; and, (5) the relative merits of the parties' positions. *Quesinberry*, 987 F.2d at 1029.

This five factor approach is not a rigid test, but rather provides general guidelines for the Court. No one of these factors is necessarily decisive. Some may be inappropriate in a given case, and in particular cases, other considerations may be relevant. *Id.* In exercising its discretion, the Court may also consider the remedial purposes of ERISA to protect employee rights and secure effective access to federal courts. *Williams*, 609 F.3d at 636.

These factors govern the question of whether to grant attorney's fees, not the value of reasonable attorney's fees. "In calculating an award of attorneys' fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citation omitted); *see also Porter v. Elk Remodeling, Inc.*, No. 1:09cv446, 2010 U.S. Dist. LEXIS 89037, at *7 (E.D. Va. August 27, 2010) (citing *Robinson* in awarding fees pursuant to ERISA). Once the court determines the lodestar figure, the court should subtract the fees incurred for unsuccessful claims which are unrelated to successful ones. The Court may then award some percentage of the remaining amount

depending on the degree of success enjoyed by the movant. *Robinson*, 560 F.3d at 244 (quotation marks and citations omitted).

The award of prejudgment interest and the rate of such award are within the discretion of the trial court, as ERISA does not specifically provide for prejudgment interest. *Fox v. Fox*, 167 F.3d 880, 884 (4th Cir. 1999) (quoting *Quesinberry*, 987 F.2d at 1030–31) (quotation marks omitted).

### III. DISCUSSION

For the reasons discussed herein, the Court finds it appropriate to award attorneys' fees and costs to Bryner in the amount requested with prejudgment interest at a rate of 2.99% calculated from the date *Bryner I* was filed. The Court will not discuss the merits of an award of costs because DuPont does not challenge that aspect of Bryner's Petition.

#### A.  Award of Attorney's Fees

The Court concludes that Bryner is eligible for an award of attorney's fees under the *Hardt* standard. Bryner's degree of success on the merits was quite high, as the Court granted his motion for summary judgment, holding that DuPont abused its discretion in denying his claim. Therefore, analysis of the *Quesinberry* factors is appropriate. *See Williams*, 609 F.3d at 634. Each factor, as well as the remedial purposes of ERISA, weighs in favor of a fee award.

1. Bad Faith – Factor One

The first factor, the degree of opposing parties' culpability or bad faith, weighs in favor of an award of attorneys' fees to Bryner. Although the Court found that DuPont abused its discretion in denying Bryner's claim, this finding, standing alone, is

insufficient to conclude that DuPont acted in bad faith. *Carolina Care Plan, Inc. v. McKenzie*, 467 F.3d 383, 391 (4th Cir. 2004). Bad faith requires more than mere negligence or error. *Id.* The Court has broad discretion in determining whether parties' actions are due merely to error or to bad faith. *Wheeler v. Dynamic Eng'g*, 62 F.3d 634, 641 (4th Cir. 1995). The Fourth Circuit has found that this factor weighs in favor of an award of attorneys' fees where a plan administrator's actions are "more than merely negligent" with respect to a claimant. *Williams*, 609 F.3d at 636.

DuPont's disingenuous handling of Bryner's claim is certainly more than mere negligence. The Fourth Circuit has upheld a district court's determination that the first factor, bad faith, weighed in favor of an award where the plan administrator "patently abused the claim review procedure by overlooking substantial evidence from [the claimant's] treating physicians . . . relying instead on minor inconsistencies in and disingenuous interpretations of these physicians' reports." *DuPerry v. Life Insurance Co. of N. Am.*, 632 F.3d 860, 877 (4th Cir. 2011). Throughout the claims process the basis of Bryner's claim for benefits was consistent: his wife's death was caused by an accidental colchicine overdose. Although DuPont acknowledged that the evidence it possessed indicated that Mrs. Bryner's death was consistent with colchicine toxicity, DuPont justified all but its last denial on the basis that Mrs Bryner's death was the result of multiple causes. This led Bryner to believe that his claim would be approved if he could prove that colchicine toxicity was the sole cause of death, and he expended considerable time and resources to that end. Not once during the eight years spent pursuing his claim did DuPont inform Bryner that even if colchicine toxicity were the sole cause of Mrs.

Bryner's death, he would still be ineligible for benefits. Once DuPont finally conceded that Mrs. Bryner's death was due to colchicine toxicity—the very theory that Mr. Bryner spent years trying to prove—DuPont denied his claim on a wholly new basis—her cause of death did not fall within the definition of "covered accident."

The administrative proceedings in the intervening period between *Bryner I* and *Bryner II* were the result of a settlement agreement in which DuPont agreed to reconsider the claim, knowing that the dispute focused on Mrs. Bryner's cause of death. DuPont also agreed to review additional evidence intended specifically to prove that colchicine toxicity was the sole cause of death. This extended review of Mrs. Bryner's medical history proved to be unavailing. Despite medical evidence supporting Bryner's claim, DuPont remained intractable in its position.

Bryner experienced a prolonged pattern of procedural unfairness throughout the entire claims process, especially given DuPont's failure to adhere to its own self-imposed deadlines. DuPont's handling of Bryner's claim can be characterized as nothing short of bad faith.

Throughout the proceedings, DuPont never revealed its interpretation of the term "accident" in the Plan, explaining only what does not qualify as an accident. DuPont's explanation favored its position and appears to have been crafted specifically for this case to justify denying Bryner's claim for benefits. No other reported ERISA case has adopted a similar construction of that policy term under similar circumstances. Where the facts established a plan administrator's deliberate attempt to interpret a plan in a clearly biased manner, the Fourth Circuit has upheld a district court's finding of bad faith

warranting a fee award. *Johannssen v. Dist. No. 1 – Pac. Coast Dist.*, 292 F.3d 159, 179 (4th Cir. 2002).

Although DuPont retained exclusive discretion to define terms within the Plan, its interpretation must be reasonable. The Court finds that the strained construction of the term "covered accident" employed by DuPont in this case was devised solely to thwart Bryner's claim.

### 2. DuPont's Ability to Satisfy the Fee Award – Factor Two

DuPont admits that it has the financial ability to satisfy an award of attorneys' fees. (Def.'s Mem. in Opp'n at 6, ECF No. 36.) For this reason, the second factor has been satisfied. While this factor alone ordinarily cannot support an award of attorneys' fees, it weighs in favor of such an award in this case. *See Carolina Care*, 467 F.3d at 391 (citing *Quesinberry*, 987 F.2d at 1028–30).

### 3. Deterrence Effect – Factor Three

The Fourth Circuit has stated that awarding attorneys' fees deters future administrators from displaying the same sort of bad faith. *Wheeler*, 62 F.3d at 641. In *DuPerry*, the Court found that an award of attorneys' fees to the claimant was proper because in light of the plan administrator's culpability, such an award would deter future administrators from failing to meaningfully inquire into beneficiaries' claims. 632 F.3d at 877. An award of fees to Bryner will likewise deter future administrators from engaging in comparable conduct.

### 4. Benefit to All Participants – Factor Four

The fourth factor, which inquires whether Bryner's suit "sought to benefit all participants and beneficiaries," favors a fee award if only slightly. *Quesinberry*, 987 F.2d at 1029. The Court may consider "the extent to which the moving party has benefited other participants and beneficiaries of the employee benefit plan." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993).

Bryner's suit was brought only to recover benefits for himself and did not specifically seek to benefit all participants and beneficiaries. However, Bryner's suit will likely convey an indirect benefit to all participants and beneficiaries of the Plan. The Court found fault in DuPont's atypically narrow definition of the term "covered accident," without informing the insured of the definition. Clarification of the terms of an employee benefit plan is advantageous to all participants and beneficiaries. Bryner's lawsuit may be viewed as having been, albeit unintentionally, for the benefit of all plan participants.

### 5. Relative Merits of the Parties' Positions – Factor Five

Because Bryner prevailed on his motion for summary judgment, the relative merit of his position also favors his request for attorneys' fees. The Court found DuPont's denial of Bryner's claim unreasonable. For almost eight years, DuPont failed to disclose its somewhat anomalous construction of the term accident. Finally, when confronted with persuasive evidence supporting his claim, Bryner was told that his wife's cause of death did not fall within the meaning of that policy term. This deceptive treatment favors an award of attorneys' fees.

In addition to the five *Quesinberry* factors, the Court may also consider the remedial purposes of ERISA to protect employee rights and secure effective access to federal courts. *Williams*, 609 F.3d at 636. This Court found that "allowing DuPont to change its definition of core terms at will undermines ERISA's goal of 'careful[ly] balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.'" (Mem. Op. of Dec. 27, 2012 at 11.) An award of fees to Bryner is appropriate to promote the legislative intent of ERISA.

### B. Value of Reasonable Attorneys' Fees

Having found that all five factors favor a fee award, the Court must now determine an appropriate amount. "In calculating an award of attorneys' fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson*, 560 F.3d at 243 (citation omitted); *see also Porter*, 2010 U.S. Dist. LEXIS 89037, at *7 (citing *Robinson* in awarding fees pursuant to ERISA). In deciding what constitutes a reasonable number of hours and rate, the Court is guided by the following twelve (12), non-exclusive factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the out-set of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and

length of the professional relationship between attorney and client; (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243–44.

Plaintiff provided the Court with a lodestar figure of $63,600.00 based on 212 hours incurred during the period of February 10, 2009 through January 11, 2013 at an hourly rate of $300.00. (Pl.'s Statement of Att'y Time Expended at 18, ECF No. 30.) The reasonableness of the lodestar amount is not at issue. DuPont does not dispute the hourly rate requested, nor does DuPont dispute the number of hours Bryner's attorney incurred on Bryner's behalf. (Mem. in Opp'n at 7.) DuPont does, however, challenge the award of attorneys' fees for the hours Bryner's attorney incurred pursuing *Bryner I*, as well as those arising from the administrative proceedings that occurred following the dismissal of *Bryner I* and prior to filing of the instant action. (*Id.*) DuPont requests that the Court reduce the lodestar amount to $34,350.00 to reflect only those attorneys' fees incurred in pursuit of the instant action.[4]

Relying on the Fourth Circuit case of *Rego v. Westvaco Corp.*, DuPont contends that the recovery of attorneys' fees is unavailable for administrative proceedings. 319 F.3d 140 (4th Cir. 2002). This, however, is a slight mischaracterization. *Rego* stands for the proposition that, consistent with ERISA's intent to resolve the majority of claims through informal administrative proceedings, an award of attorneys' fees in an ERISA action are unavailable prior to *exhausting administrative remedies*. *Id.* at 150 (emphasis

---

[4] Based on Plaintiff's calculation of attorney time expended, DuPont contends that 63.25 hours, totaling $18,975.00 in fees, arise from *Bryner I*, and that 34.25 hours, totaling $10,275.00, relate to the administrative proceedings that occurred following the dismissal of *Bryner I*, but prior to filing of the instant action.

added). Citing *Rego,* districts courts in the Fourth Circuit have interpreted this limitation to apply only to pre-litigation administrative proceedings. *See, e.g., McIntyre v. Aetna Life Ins. Co.,* 586 F.Supp. 2d 638, 640 (W.D. Va 2008) (awarding fees for activities "inextricably [] linked to litigation, not the administrative process."); *Bd. of Trs. V. E. Sign Tech, LLC,* 2006 U.S. Dist. LEXIS 72345, at *5–6 (E.D. Va. Oct. 4, 2006) (fees incurred as "part of the litigation itself . . . are recoverable under the ERISA statute.").

Bryner's petition requests attorneys' fees beginning February 10, 2009—over two years after he had exhausted his administrative remedies. The administrative proceedings for which Bryner seeks recovery relate only to those which occurred pursuant to the court-approved settlement agreement in *Bryner I,* which occurred well after Bryner had exhausted his administrative remedies. Therefore, the *Rego* limitation on attorneys' fees in administrative proceedings is inapplicable to the fees claimed herein.

The Supreme Court has affirmed the award of attorneys' fees incurred during administrative proceedings conducted pursuant to a court-approved settlement plan. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 561 (1986). Additionally, the Second Circuit has concluded that in the ERISA context, attorneys' fees incurred during an administrative remand are recoverable. *Peterson v. Continental Cas. Co.,* 282 F.3d 112, 122 (2d Cir. 2002). Given the procedural similarity of the administrative proceedings which occurred pursuant to the *Bryner I* settlement agreement and the administrative remand in *Peterson,* the Court finds it proper in the ERISA context to award attorneys' fees for administrative proceedings pursuant to a court-approved settlement agreement.

Of particular significance in this case is the unique procedural posture resulting from the *Bryner I* settlement agreement. DuPont consented to the administrative proceedings for which Bryner now seeks recovery. As part of their agreement, DuPont achieved dismissal of *Bryner I*. The parties also expressed a mutual understanding that Bryner could revive his lawsuit in this Court if DuPont once again rejected his claim. It is reasonable to interpret the agreement allowing Bryner to "refile *this* action in *this* Court" as an agreement to treat both cases and the intervening administrative remand as a single, continuous litigation of Bryner's claims. Had DuPont desired to separate the two cases or to limit attorney's fees to any subsequent litigation, it could have demanded a settlement term to that effect. It did not do so, and so the settlement agreement can be reasonably read as an agreement to treat both lawsuits as one.

Additionally, DuPont's own conduct as part of the settlement agreement further supports the award of fees for the totality of the litigation. This is particularly so since the pivotal acts of bad faith occurred during this process. After reaching the settlement agreement in *Bryner I*, the ensuing administrative proceedings were prolonged by DuPont's own failure to adhere to agreed upon deadlines. The administrative reconsideration ultimately provided no benefit to Bryner as his claim was denied—this time on newly crafted grounds. At each juncture, Bryner was led to believe that his claim would be approved if colchicine toxicity was proved to be the sole cause of death. Bryner continuously pursued this goal in good faith.

Ultimately, DuPont conceded that colchicine toxicity was the sole cause of death, but steadfastly denied Bryner's claim contending that his wife's death was not the result

of a "covered accident"—a term undefined in the Plan. DuPont's needless procedural posturing and dilatory tactics necessitated Bryner's filing of the second lawsuit. *Bryner I*, the intervening administrative proceedings, and the instant action are inextricably related. They are integral parts of an eight-year, relentless journey seeking just resolution of Bryner's claim. Based upon the circumstances underlying Bryner's petition for attorneys' fees, the Court finds it appropriate to award Bryner fees for the full amount requested.

### C. Prejudgment Interest

The award of prejudgment interest and the rate of such award are within the discretion of the trial court, as ERISA does not specifically provide for prejudgment interest. *Fox*, 167 F.3d at 884 (quoting *Quesinberry*, 987 F.2d at 1030–31) (quotation marks omitted). Plaintiff requests an award at a rate of 12% or more from at least April 15, 2009, the date on which *Bryner I* was filed. While DuPont objects to an award of any prejudgment interest, in the event that the Court awards interest, it requests a rate between 0.39% and 2.99% based on the standard for post-judgment interest. *See* 28 U.S.C. § 1961. DuPont further argues that interest should begin to accrue no sooner than May, 14, 2010, the date on which the administrative proceedings pursuant to the *Bryner I* settlement agreement commenced.

In this case, a rate of 12% is excessive. Unlike *Fox*, 167 F.3d at 884, the employee benefit in this case does not implicate the duty to make investments with a reasonable rate of return. Instead, the accidental death benefit involves a sum certain of $300,000. At the same time, the excessive delays caused by DuPont justify some amount

of prejudgment interest. DuPont suggests that the Court consider the weekly average 1-year constant maturity Treasury yield of 0.39% and the weekly average for the 7-year of 2.99% that were in effect on May 10, 2010. (Exhibit H, Mem. in Opp'n.) Such figures are derived from the post-judgment interest rate established at 28 U.S.C. § 1961.

The Court finds that the 7-year weekly average Treasury yield of 2.99% adequately accounts for the nearly decade-long delay that Bryner faced in securing benefits. Such a determination is well within this Court's discretion. *Quesinberry*, 987 F.2d at 1030–31). And because the Court has already found that *Bryner I*, *Bryner II*, and the intervening administrative reconsideration are inextricably interrelated, prejudgment interest shall begin to accrue from the date that *Bryner I* was filed.

## IV. CONCLUSION

In sum, the Court finds it appropriate to award attorneys' fees in the amount of $63,600.00 and costs in the amount of $700.00. On this basis, Plaintiff's Petition for Attorney's Fees, Costs and Prejudgment Interest will be granted. However, the Court will deny the request for prejudgment interest at a rate of 12%, opting instead for a rate of 2.99% calculated from April 15, 2009.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 27, 2013
Richmond, Virginia